UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 18-81-REW

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.           **RESPONSE TO MOTION FOR SEVERANCE**

LIVIU-SORIN NEDELCU                                                         DEFENDANT

\* \* \* \* \*

Comes the United States, through counsel, and responds in opposition to the Defendant, LIVIU-SORIN NEDELCU's motion to sever his case for trial [DE 516], for the reasons stated below.

## Background

The Superseding Indictment charges each defendant, including NEDELCU, with being a member of an extensive racketeering conspiracy, which has been described as the Alexandria Online Auction Fraud ("AOAF") Network, in addition to being members of conspiracies to commit wire fraud and/or money laundering.  The RICO conspiracy involved several tiers or players within the conspiracy, each of whom performed distinct, but mutually required, symbiotic roles.  There were individuals who placed advertisements for non-existent items on the internet; individuals who dealt with prospective buyers (victims) on the phone; players who received the prepaid cards or other form of payment from the victims; players who received information related to the victim payments, and

then converted it to cash; bitcoin sellers who converted the cash to bitcoin and transmitted it to Romania; and, those individuals in Eastern Europe who converted the bitcoin back into fiat currency.

NEDELCU does not challenge joinder under Rule 8 of the Federal Rules of Criminal Procedure; in fact, the tenor of his Motion suggests a concession on that point. [DE 516-1, at Page ID# 3818 (noting that "joinder may have been permissible under Rule 8(b)"]. Given this statement, the Government has elected not to address joinder, and incorporates instead the Court's analysis in its February 12, 2020 Order denying co-defendant Vlad-Calin Nistor's motion for severance. [DE 522, at Page ID# 3861–3863]. The Government respectfully submits that the same principles discussed in the Court's Order apply here.

NEDELCU instead argues that severance is warranted under Rule 14(a) to "present a defense that he was not part of the AOAF Network, to permit high-level managers of the AOAF Network to testify that he was not an associate, to avoid confusion among jurors, and to provide him a fair trial." [DE 516-1, at Page ID# 3819]. Because his arguments are contrary to settled law and the facts of this case, the motion must be denied.

## Argument

The law presumes a joint trial of jointly indicted coconspirators. *Zafiro v. United States*, 506 U.S. 534 (1993); *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) ("As a general rule, persons jointly indicted should be tried together."). This presumption is strong. *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006) ("[A] strong policy

presumption exists in favor of joint trials when charges will be proved by the same evidence and result from the same acts."). To rebut that presumption, NEDELCU must demonstrate that a specific trial right will be denied by a joint trial, or that the jury will be unable to compartmentalize the evidence relating to him. *Id.* "[A] defendant seeking severance at trial bears a strong burden and must demonstrate substantial, undue, or compelling prejudice." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999).

It is not unusual for a conspiracy to involve many different types of players, with varying levels of evidence against them, and varying degrees of culpability. *See United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987) ("[A] defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. . . . The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases."); *see also United States v. Ledbetter*, 137 F. Supp. 3d 1042, 1053–54 (S.D. Ohio Oct. 2, 2015) (collecting and citing Sixth Circuit cases). In fact, Courts have refused to grant severance on the basis that

> (1): a defendant might have a better chance for acquittal if tried separately"; "the co-defendants had different levels of culpability than the defendant seeking severance"; (3) "the other defendants had a criminal record"; (4) "there might be hostility or a conflict of interest between the defendants"; or (5) "evidence may be admissible against one defendant but not against others." 1A Charles Alan Wright et al., *Federal Practice and Procedure*, § 223 (4th ed. 2015) (collecting cases); *United States v. Gardiner*, 463 F.3d 445, 473 (6th Cir.2006) (same); *Lloyd*, 10 F.3d at 1215 (same).

*Ledbetter*, 137 F. Supp. 3d at 1050.

"Disparity of evidence is not generally enough to cause the granting of a separate trial." *Id.* at 1053–54 (holding that neither the number of defendants, the potential for a

3

spillover effect from the evidence, nor the likelihood of antagonistic defenses warranted severance). To support severance, the claimed prejudice must be "compelling, specific, and actual." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).

Against these bedrock principles, NEDELCU's arguments are largely routine. He claims a need for testimony from co-defendants to show that he was not part of the RICO conspiracy, and if he is unable to elicit this testimony, NEDELCU claims that jurors would become confused and potentially convict him based on the spillover effect of prejudicial evidence. These arguments are conclusory, speculative, and just as applicable to every other member of the charged RICO conspiracy. *See United States v. Martinez*, 432 F. App'x 526, 529 (6th Cir. 2011) ("[S]everance motion must be something more than the run-of-the-mill, plain vanilla prejudice that is incident to . . . any criminal trial involving more than one defendant."). The Government will address NEDELCU's specific arguments in turn.

NEDELCU claims a need to call co-defendants who, in his estimation, will claim no knowledge or association with him in any of the charged crimes in the Superseding Indictment. More specifically, NEDELCU claims that he must call Stoica, Popescu, and Ologeanu to testify about his lack of connections or associations to the RICO enterprise, which he will be unable to do absent severance [DE 516-1, at Page ID# 3822].

> A stringent test is to be employed in ruling on a motion for severance in order to obtain a codefendant's testimony. The defendant "must demonstrate: (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed."

4

*United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987).

NEDELCU's argument in support of severance fails on each of these factors. First, NEDELCU cannot establish a bona fide need for the testimony or its exculpatory nature and effect. "The government need not prove that each conspirator knew every member of the conspiracy, or that each knew of the full extent of the conspiracy, because such facts may be inferred from the interdependence of the enterprise." *United States v. Rogers*, 118 F.3d 466, 478 (6th Cir. 1997). And this is particularly true in a complex cyber conspiracy in which actors took advanced operational security measures to conceal identities and obfuscate conduct. Thus, even if true, lack of knowledge of the other coconspirators cannot be a basis for severance in this case.

Second, NEDELCU's argument is nothing but unsupported conjecture about the substance of his co-defendants' testimony. NEDELCU offers nothing concrete to suggest that those co-defendants will testify in his favor. And finally, NEDELCU offers nothing concrete (other than "information and belief" as to Stoica [DE 516-1 at Page ID # 3821]) to suggest that those co-defendants, still awaiting trial, will waive their Fifth Amendment rights to testify on behalf of NEDELCU. *See United States v. Coffman*, No. 09-CR-181-KKC, 2010 WL 4102266, at *4 (E.D. Ky. Oct. 5, 2010) (rejecting a defendant's request for severance based on *Causey* because "the Defendant does not provide a bona fide need for the testimony, does not state the substance of the testimony, does not describe the testimony's exculpatory nature and effect, and does not demonstrate that [the desired witness] would in fact waive his Fifth Amendment privilege against self-incrimination if

5

the case were severed.")

NEDELCU confirms the unlikelihood of this argument succeeding in a footnote. [*Id.* at Page ID# 3819 ("Mr. Nedelcu acknowledges that the facts set forth herein may not meet this stringent standard.")]. And for good reason. The "extraordinary remedy" of severing properly joined coconspirators is not justified under these circumstances. *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005).

NEDELCU next, presumably in an effort to challenge the sufficiency of the Government's evidence, offers a narrow characterization of his own conduct within the larger scope of the RICO count. He relies on 3 pages of a 47-page U.S. Secret Service memorandum,[1] cherry-picking portions that ostensibly demonstrate his limited association with the Enterprise. From these records, NEDELCU offers a self-serving characterization of the facts, claiming that he should be accountable only for those direct links between himself and other individuals charged. [DE 516-1, at Page ID# 3820 ("There are no allegations in the [Superseding] Indictment setting forth Mr. Nedelcu's association in fact with the AOAF Network or any of his co-defendants, other than Adrian Mitan (an old friend), and the Confidential Source.").][2]

But NEDELCU's argument ignores the references to "others known and unknown

---

[1] Even this Memorandum was a non-exhaustive preview of the evidence against NEDELCU.
[2] In citing to *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987) – a case granting severance to minor defendants – NEDELCU seems to insinuate that he was a minor participant. But, as evidenced in the Superseding Indictment (calling him a mid-level manager), the Memorandum, and evidence to be introduced at trial, NEDELCU is far from the minor participant severed in *Gallo*. Moreover, the Court has already rejected the application of *Gallo* to the present case. [DE 522 at Page ID # 3867, n. 11 ("Ultimately, this case, despite its complexity, is a far cry from *Gallo*.")].

to the Grand Jury" -- unindicted coconspirators [*See, e.g.,* DE 249 at Page ID # 2404, 2407] – in the Superseding Indictment and NEDELCU's place within the overall RICO conspiracy count, which details a sweeping, layered scheme perpetrated by the "leaders, members, and associates" of an enterprise engaged in multiple acts of racketeering. [DE 249, at Page ID# 3860]. Each tier within the conspiracy received a portion or portions of the illegally obtained proceeds. For the jury to understand the conspiracy, all of its layers and players must be described by the evidence. To understand any one defendant's role, including NEDELCU's, requires seeing the evidence supporting everyone's role. Much of the "same evidence" tied to the "same acts" will be used to prove, not only the existence of the Enterprise, but also the various co-defendants' associations to it, and Sixth Circuit law rejects severance in those situations. *See Caver*, 470 F.3d at 238.

NEDELCU's reliance on the Secret Service memorandum actually undermines his argument. He claims that, except for establishing NEDELCU's ties to "old friend" Adrian Mitan, the memorandum "asserts a link between Mr. Nedelcu and one other co-defendant—Andrei-Catalin Stoica—alleged to be "'American Massive / Ekathy.'" [DE 516-1, at Page ID# 3820]. But that is simply false. Investigators also detailed a transactional relationship between NEDELCU and co-defendant Rossen Iossifov, as well as fraud and money-laundering connections to co-defendants Dimitrious Brown and Rashawd Tulloch. Proof related to all of those individuals will demonstrate NEDELCU's place as a fraudster within the scheme. To sever NEDELCU and isolate the proof against him would be inefficient and a striking departure from this Circuit's law on severance,

7

which rejects run-of-the-mill requests like NEDELCU's. *See Martinez*, 432 F. App'x at 529. Moreover, NEDELCU can cross-examine investigators on the very issues he raises in his motion to sever. He will suffer no prejudice from a joint trial.

NEDELCU confuses the evidence at trial, attempting to draw a distinction between whether he "agreed to associate with the so-called AOAF Network" and "whether he conspired with the Confidential Source and others to commit money laundering, for example." [DE 516-1, at Page ID# 3821]. However, proving the conspiracy with other members of the AOAF Network to commit money laundering involves overlapping proof as to whether he participated in conduct of the AOAF Network, so his distinction makes no difference. He also argues that "[c]ritical questions" exist about "whether Mr. Nedelcu agreed to associate with the so-called ***AOAF Network***," given what he characterizes as limited personal (or nefarious) communications between himself and Stoica. But his "critical questions" are unsupported by evidence and, even if asked, may elicit answers without legal consequence. It is axiomatic that defendants "can conspire with individuals he has never met, so long as he participates and is aware of their assistance in the criminal venture." *See Rogers*, 118 F.3d at 478. And "[f]or the purposes of RICO, the threshold showing of 'association' is not difficult to establish: it is satisfied by proof that the defendant was aware of at least the general existence of the enterprise named in the indictment." *United States v. Nicholson*, 716 F. App'x 400, 406 (6th Cir. 2017) (quoting *United States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998)).

NEDELCU's arguments imply that he will be prejudiced if the acts of others are

admitted in his trial. But to the extent that NEDELCU bemoans the introduction of that evidence, "[c]onspirators are generally held liable for the known and foreseeable acts of their co-conspirators committed in furtherance of the conspiracy." *United States v. Walton*, 908 F.2d 1289, 1299 (6th Cir. 1990). So, even if NEDELCU might not have performed the same acts as Stoica, Iossifov, Dimitrious Brown, Rashawd Tulloch, or others, NEDELCU is criminally liable for the acts of the individuals within the structure of the conspiracy.[3] *See, e.g.*, *United States v. Sutton*, 642 F.2d 1001, 1017 (6th Cir. 1980) ("[I]t is irrelevant that each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime is intended to further the enterprise's affairs.").

Finally, NEDELCU argues that a joint trial would prevent the jury from making a reliable judgment about his guilt or innocence, given that the Superseding Indictment charges other conspiracy counts that do not contain every defendant charged in Count One. [DE 516-1, at Page ID# 3823]. He confuses whether the evidence to support the wire fraud and money laundering conspiracies are part of the pattern of racketeering activity necessary to prove the RICO violation in Count 1. The Superseding Indictment includes wire fraud

---

[3] In a footnote, NEDELCU insinuates that the Government "arbitrarily determined" that all individuals transacting through the CS must have been involved in the Enterprise, an argumentative position that is unsupported by the facts. [DE 516-1, at Page ID# 3820]. NEDELCU overlooks *direct* financial transactions with at least eight of the charged co-defendants in this case, including multiple bitcoin transactions with "old friend" Adrian Mitan, who has pleaded guilty; Americanmassive/Ekathy; Victor-Aurel Grama, a charged fugitive known as Cekebru; Beniamin-Filip Ologeanu, a charged codefendant known under numerous monikers, but notably Johnla73; Vlad-Calin Nistor; Rossen Iossifov, known as RG Coins; and Stefan-Alexandru Paiusi, who has pleaded guilty and was known as Nolimit. These "arbitrary determinations" exist only in NEDELCU's mind, not in the anticipated evidence in this case.

and money laundering as part of the racketeering activities, and notes that Enterprise's purpose is to enrich members of the group through wire fraud and money laundering, among other things. Thus, from the face of the Superseding Indictment, the evidence supporting the wire fraud and money laundering conspiracies will also support the RICO charge.

As to NEDELCU's concern with any alleged spillover effect of proof not specifically tailored to his conduct, it is well-settled that "the mere fact that all defendants did not participate in the events charged in each count does not, without more, compel severance." [DE 522, at Page ID# 3865 (citation omitted).] And the "risk of transference of guilt" may be "reduced to the minimum by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently." *United States v. Lane*, 106 S. Ct. 725, 732 n.13 (1986) (internal quotation marks removed); *see also United States v. Chavis*, 296 F.3d 450, 461–62 (6th Cir. 2002) (analyzing a jury charge that minimized any potential effects of spillover evidence).

A concern for judicial economy is especially important in this case. "The predominant consideration of a decision regarding joinder under Rule 8(b) is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to insure that a given transaction need only be proved once." *United States v. Frost*, 125 F.3d 346, 390 (6th Cir. 1997). In other words, "society has an interest in speedy and efficient trials," and "separate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures."

*Caver*, 470 F.3d at 238 (internal citations omitted).

Here, the trial of any single defendant, or subset of defendants, will require a presentation of almost all of the evidence that a joint trial would require. The government has to prove that NEDELCU, or any other charged coconspirator for that matter, joined a criminal enterprise. The existence of a criminal enterprise is an element of the offense. That means the evidence of the entire criminal Enterprise must be introduced in any trial, separate or joint. Therefore, severance here would not alleviate the potential for transference of guilt. It would only waste court and government time, money, and resources. *See Martinez*, 432 F. App'x at 529 (holding that because the same evidence would be admissible whether or not the trial was severed, concerns for judicial economy and efficiency outweigh arguments for severance).

Practically speaking, NEDELCU's motion makes little sense, especially when "the risk of prejudice to defendants in a joint trial is presumably low, because 'juries are presumed capable of sorting evidence and considering separately each count and each defendant.'" *See Caver*, 470 F.3d at 238 (quoting *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996)). NEDELCU directly transacted with numerous charged individuals in this case, and his indirect connections to others simply strengthen the need to try all of the remaining defendants together. Proving these connections will require duplicative testimony between trials, particularly on the RICO count, where the Government will be proving the existence of an Enterprise and NEDELCU's participation in it. Severing NEDELCU would result in (at least) two largely duplicative trials.

For the reasons stated, the motion to sever should be denied.

Respectfully submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By:   /s/ Kathryn M. Anderson
Kathryn M. Anderson
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
(859) 685-4885
Kathryn.Anderson@usdoj.gov

Kenneth R. Taylor
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
Ken.Taylor@usdoj.gov
(859)685-4874

Timothy C. Flowers
Senior Trial Attorney
Computer Crime and Intellectual
Property Section
1301 New York Avenue NW, Suite 600
Washington, DC 20530
Timothy.Flowers2@usdoj.gov
(202)353-0684

Frank Lin
Senior Counsel
Computer Crime and Intellectual
Property Section
1301 New York Avenue NW, Suite 600
Washington, DC 20530

Frank.Lin@usdoj.gov
(202)305-9266